BROWNE v. The HENRY PLATT. See Case No. 2,010.

BROWNE (SULLIVAN v.). See Case No. 13,-593.

---

## Case No. 2,036.

### BROWNE v. UNITED STATES.

[1 Curt. 15.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1851.

OFFICER OF THE UNITED STATES — WHAT CONSTITUTES — FEES.

The payment of navy and privateer pensions, under the orders of the secretary of the navy, does not constitute the person paying them an officer of the United States; and if the person thus disbursing public money at the same time holds the office of navy agent, he cannot be allowed any extra pay or emolument for making such disbursement.

[Followed in U. S. v. Cutter, Case No. 14,-911. Cited in U. S. v. Wendell, Id. 16,-666.]

[See U. S. v. Ripley, 7 Pet. (32 U. S.) 18; Andrews v. U. S., Case No. 381; U. S. v. Brown, 9 How. (50 U. S.) 487.]

This was a writ of error to the district court of the district of Massachusetts.

An action was brought by the United States against [J. Vincent Browne] the plaintiff in error, to recover of him a balance of $1,164.75, alleged to be due from him as navy pension agent. [There was a verdict for the United States, and Browne brought error. Affirmed.]

The bill of exceptions was as follows: "At the trial of the cause before the jury, the plaintiffs claimed to recover of the defendant, late navy pension agent, at Boston in Massachusetts, the sum of eleven hundred and sixty-four dollars and seventy-five cents ($1,164.75). This amount had been retained by the defendant, upon the ground that he was entitled to so much, as a commission of two and one half per cent. for disbursing, in the capacity of navy pension agent, the sum of forty-six thousand five hundred and eighty-nine dollars and ninety-two cents ($46,589.92); and he proved this claim to have been disallowed by the treasury department in the defendant's accounts. The defendant, to maintain the issue on his part, gave evidence that, on the ninth day of October, 1841, he, then being navy agent at Boston, under commission dated the twentieth day of September, 1841, was appointed by the secretary of the navy agent for paying navy pensions at Boston; that he therefore entered upon the duties of this agency, and continued pension agent till the twenty-second day of April, 1845, when he was notified of the appointment of his successor; and the second day of May following, when he was directed to pay over the funds of the navy pension agency to his successor, Isaac P. Davis, Esq., who was not navy agent at Boston; that the defendant had ceased to be navy agent on the

[1] [Reported by Hon. Benjamin R. Curtis, Circuit Justice.]

first day of April, 1845, when his successor in that office, Isaac Hull Wright, Esq., was appointed; that, during the period of his navy pension agency, he performed all the duties of that office, and received and disbursed the funds of the government to the amount before stated, keeping separate books and separate funds, and rendering separate accounts thereof and of the performance of his duties therein, and conducting all the affairs of his agency under the name of navy pension agent, at Boston; that he received no allowance or compensation for the same, separate from the compensation fixed by law, as navy agent; and that the commission charged above was a fair and reasonable compensation for his services as navy pension agent; that he received, during the whole time that he was navy agent, the maximum compensation allowed by law for performing the duties of that office. And the defendant thereupon contended that, by law, he was entitled to the sum charged and disallowed, as above, as a fair and reasonable compensation for his services in the office of navy pension agent. But the judge instructed the jury that, during the time the defendant was navy agent, and actually received the maximum compensation allowed by law to that office, he was not entitled to further additional compensation for services rendered by direction of the secretary of the navy, as pension agent. Whereupon, the defendant excepted to these instructions of the judge, and prayed that his exceptions might be allowed, and they were allowed accordingly. Signed, Peleg Sprague, Judge."

The question was, whether the plaintiff in error was entitled to compensation for the services rendered by him, as navy pension agent, while he held the office and received the compensation of navy agent.

R. Choate and J. H. Brown, for plaintiff in error.

The District Attorney, for the United States.

CURTIS, Circuit Justice. The act of March 3d, 1839, § 3 (5 Stat. 349), provides that no officer, in any branch of the public service, or any other person, whose salary or whose pay or emoluments is or are fixed by law and regulations, shall receive any extra allowance or compensation, in any form whatever, for the disbursement of public money, or the performance of any other service, unless the said extra allowance or compensation be authorized by law.

The act of August 23d, 1842 (5 Stat. 510), passed about ten months after Mr. Browne's appointment, substantially re-enacts this law, with some changes of phraseology, apparently designed to render the same more clear, and superadds the requirement, that the appropriation for such additional pay, extra allowance, or compensation, must explicitly set forth that it is made for such object. This latter clause does not seem to be material in this case, for it is not pretended that there is any law of congress authorizing compensation for the services in question; nor is it denied, that, if this case be within either of these acts, the compensation claimed by the plaintiff in error cannot be allowed. So that the question is, whether the case stated by the bill of exceptions is within either of these acts of congress. It is clear that Mr. Browne, as navy agent, comes within the very broad language of these laws; the words, "no officer in any branch of the public service, or any other person, whose salary, pay, or emoluments is or are fixed by law or regulations," certainly include a navy agent. He was a person in a branch of the public service, and his emoluments were fixed by law; for the act of March 3d, 1809, § 3 (2 Stat. 536), which authorized the president to appoint such agents, provides that their compensation shall not, in any instance, exceed that allowed by law to the purveyor of public supplies, which, by the act of February 23d, 1795, § 1 (1 Stat. 419), was fixed at two thousand dollars per annum. Not denying that this is so, the counsel for the plaintiff in error argue, that this case is not within the prohibitory acts either of 1839 or 1842, because those acts are not applicable to a case where the same person holds two distinct offices, and discharges the appropriate duties of each; and because Mr. Browne did thus hold and discharge the duties of two distinct offices, viz., navy agent and navy pension agent.

Both these positions require examination. The office of navy agent, though not designated by that name, is authorized by the act of 1809, above referred to. The president, with the advice and consent of the senate, is therein empowered to appoint agents, either for the purpose of making contracts, or for the purchase of supplies, or for the disbursement, in any other manner, of moneys for the use of the military establishment or of the navy of the United States. No other than this very general description of the duties of this officer is known to me to exist in any law. Upon such appointment a commission issues, which empowers and requires the officer therein denominated a navy agent, to perform such duties as shall from time to time be required of him, by the president or the secretary of the navy.

To ascertain whether the payment of navy pensions, under the orders of the secretary of the navy, constitutes a separate office, it is necessary to refer to the acts of congress on that subject. By the act of March 3, 1799, §§ 9, 10 (1 Stat. 716), the money accruing from the sale of prizes was declared to be a fund for the half-pay of such officers and seamen as might be entitled thereto, and for making provision for disabled and meritorious officers and seamen, and it was

put under the management of the secretaries of the navy, war, and the treasury.

By the act of June 26, 1812, § 17 (2 Stat. 763), two per centum of the net amount of prize money arising from captures, or salvage for recaptures, by the private armed vessels of the United States, are directed to be paid to the United States, to be held as a fund for the support and maintenance of persons wounded, and of the widows and orphans of persons slain on board such private armed vessels. And by the act of July 10, 1832 (4 Stat. 572), the former board of trustees are directed to close their accounts, and pay these funds to the treasurer of the United States, for the use of the secretary of the navy, for the payment of navy and privateer pensions; and the secretary of the navy is constituted the trustee of such funds, and is authorized to grant and pay the pensions according to the acts of congress in that behalf, and to keep accounts of receipts and expenditures. It is under this authority that the secretary of the navy required Mr. Browne to receive certain of these funds, and disburse the same in part execution of the trust which, by the last-mentioned law, is incumbent on the secretary as the trustee of these funds.

It is impossible to maintain that this order of the secretary is such an appointment to an office as takes the case out of the acts of 1839 and 1842. In the first place, if such an office as navy pension agent existed by law, the head of a department could not appoint to such office, there not being any act of congress vesting in him that power. Const. art. 2, § 2; U. S. v. Maurice [Case No. 15,747]. In the next place, there is no such office created by law. It must be admitted that congress, by making the secretary of the navy a trustee, and requiring him to take care of and disburse these funds, did, by implication, enable him to employ the necessary instrumentalities to execute the trust; and that, until July 4, 1840 (5 Stat. 385, § 6), when the receivers-general were required by congress to pay pensions under the direction of the secretary, he might use a reasonable discretion in the selection and employment of these instrumentalities. But this falls far short of the creation of an office under the United States. It amounts only to the employment of some person to execute, for the time being, some portion of this trust; but where, or how long, or to what extent, or whether at all, such temporary and occasional agency should exist, is left to the discretion of the head of the department. Now, to allow that this not only constitutes an office, but that a navy agent, doing such service, is to be deemed thereby to hold a second and distinct office, and so not to come within the prohibition of these acts of 1839 and 1842, would simply annul those acts. Because, in every case where extra compensation could be claimed before the act of 1839, by an officer having a fixed compensation, it must have been claimed for services not within the scope of the official duties of the claimant. Andrews v. U. S. [Case No. 381]. And if it were enough, under these acts, that the claimant had done duty, out of the scope of his office, under a requisition by the head of the department, no cases would be left for these acts, restraining increased compensation, to operate upon. I cannot agree, therefore, to the position that Mr. Browne, as navy pension agent, did hold a separate office under the constitution and laws of the United States, so as to take his case out of the prohibitions of these laws.

But if he did hold a separate office, created by law, to which he was duly appointed, I should still be unable to come to the conclusion that he is legally entitled to the compensation claimed. Before 1839, the supreme court, by a series of decisions, had established the rule, that an officer who rendered services to the government not within the scope of his official duties, was entitled to set off his equitable claims for compensation in an action by the United States, although they were of such a character that the head of a department could not by law allow them. U. S. v. Wilkins, 6 Wheat. [19 U. S.] 135; U. S. v. McDaniel, 7 Pet. [32 U. S.] 1; U. S. v. Ripley, Id. 18; U. S. v. Fillebrown, Id. 28. And this principle had been applied to very many cases in the circuits. To the abstract justice of this principle, it would seem there could be no objection; but, apparently, congress became dissatisfied with its practical application to that class of cases where the officer's compensation is fixed by law or regulations, and therefore enacted these laws of 1839 and 1842. Of the first of these acts, the supreme court, in the case of Hoyt v. U. S., 10 How. [51 U. S.] 141, says: "It is impossible to misunderstand this language, or the purpose and intent of the enactment. It cuts up by the roots these claims by public officers for extra compensation on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of congress. This prohibition is general, and applies to all public officers, or quasi public officers, who have a fixed compensation."

Now, looking at the intention of these acts, and the language employed in them, I am unable to come to the conclusion, that extra compensation can be allowed to an officer, because he has disbursed public money which his office did not require him to disburse. This is all that needs to be decided in this case. The argument at the bar was, that the extra allowance could not mean a compensation fixed by law for discharging all the duties of another and distinct office, and so entitling him by law to such compensation. This may be so. But to bring this case within the argument, it must be shown that there is another office, which

has a compensation attached to it by law, and that the claimant has become entitled to that compensation by performing all its duties, which in this case is not true. U. S. v. Morse [Case No. 15,820] was much relied on; but that was decided under another statute, and was the case of a distinct office, having a compensation attached to it by law, and the claimant had discharged its duties. The general observations of Mr. Justice Story concerning the policy of congress, are in entire accordance with the settled doctrines of the supreme court, before the act of 1839 was brought under its notice; and as he makes no allusion to that act, which, being only one section of an appropriation bill, might well escape his attention, I cannot consider that he had it in view, or intended to embrace it in his general reasoning. The decision of the learned district judge, for the Maine district, in U. S. v. Jarvis [Id. 15,468], is also relied on by the plaintiff in error. But the learned district judge for this district decided this case the other way. I have not the advantage of knowing the reasons for either of these decisions; and though I have great respect for the opinions of both those learned judges, their decisions, as matter of authority, can have no binding force in this appellate court.

I have avoided all discussion of one of the questions suggested at the bar, whether the disbursement of these moneys really came within the scope of the official duties of the navy agent, and so whether his bond would cover the faithful performance of this duty. It is a question not necessary to be decided in this case, and I give no opinion upon it. My conclusion is, that there was no error in the ruling of the district judge, and that the following order be entered:

Order: This cause came on to be heard on the transcript of the record of the district court of the United States for the district of Massachusetts, and was argued by counsel; on consideration whereof, it is now here adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby, affirmed, with costs and damages, at the rate of six per cent. per annum.